UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

-------------------------------------------------------X

| | | |
|---|---|---|
| **Jay York,** | X | Civil Action No. _____ -cv- _____ |
|    **Plaintiff,** | X | |
|         v. | X | **PLAINTIFF'S COMPLAINT FOR COPYRIGHT INFRINGEMENT AND** |
| **MaineToday Media, Inc. d/b/a** | X | **INTERFERENCE WITH** |
| **Portland Press Herald,** | | **CONTRACTUAL AND BUSINESS** |
| | X | **RELATIONS** |
|    **Defendant.** | | |
| | X | |
| | | **JURY TRIAL DEMANDED** |

-------------------------------------------------------X

### PLAINTIFF'S COMPLAINT FOR COPYRIGHT INFRINGEMENT

NOW COMES Plaintiff Jay York ("York"), by and through his undersigned attorney, and prays to this honorable Court for relief based upon the following:

### JURISDICTION AND VENUE

1. This action arises under the Copyright Act of 1976, Title 17 U.S.C., § 101 *et seq* and tortious interference with contractual and business relations.

2. This Court has jurisdiction under 28 U.S.C. § 1331 and 1338 (a) and (b).

3. Subject matter jurisdiction is further predicated on 28 U.S.C. § 1367, which provides for supplemental jurisdiction over claims that form part of the same case or controversy out of which the claim in the underlying action arose.

4. Venue in this judicial district is proper under 28 U.S.C. § 1391(c) and 1400(a) in that this is the judicial district in which Defendant MaineToday Media, Inc. d/b/a Portland Press Herald ("PPH") can be found, has a regular and established place of business in this judicial district and that a substantial part of the acts and omissions giving rise to the claims occurred in this judicial district.

## PARTIES

5. Plaintiff York is an individual residing and domiciled in the State of Maine.

6. Upon information and belief, Defendant PPH is a Delaware corporation doing business in and with the state of Maine with a principal place of business located at One City Center, 5th Floor, Portland, Maine 04101.

## FACTUAL BACKGROUND

7. York is a photographer with 35 years of experience in the photography industry. York's niche market of photography is taking photographs of works of art created by artist clients and providing said photographs to the original artist for use of the photographs to market and sell his or her works of art.

8. York offers his services to the Greater Portland area's artist community, and has built up quite a large clientele of approximately 1,000 artists to whom he repeatedly provides his services.

9. York's business is wholly dependent on his clientele of artists, who implicitly trust him to depict their artwork in the proper lighting, sizing, cropping, angle, focus and with proper photography equipment.

10. PPH is the publisher of the newspaper Portland Press Herald, which has an approximate 60,000 daily and 57,000 Sunday print newspaper circulation, and an online presence garnering 4.6 million page views per week. Portland Press Herald is the largest newspaper publisher in the State of Maine.

11. PPH has a section of their newspaper that is called "Audience" which provides readers with art-related information, including stories, upcoming art gallery events, art show reviews and commentary.

12. Since April 2013, York has discovered that Defendant PPH has published at least twenty-eight photographs owned by York in the Audience section of the Portland Press Herald without requesting permission from York to publish said photographs.

13.     Since April 2013, York has repeatedly informed Defendant PPH that Defendant PPH failed to request permission to publish his photographs and has demanded that Defendant PPH compensate York for unauthorized usage of York's photographs, and, in the future, to properly credit York for the photographs.

14.     Since April 2013, Defendant PPH has refused to request York's permission to use his photographs in the Portland Press Herald newspaper, stating that there are "too many photographs coming in to the Portland Press Herald" to spend the time to properly determine the owner of the copyright.

15.     On or about March 8, 2015, York discovered that PPH had used his photograph of a sculpture created by Angel Braestrup entitled "The Kiss" in the Audience section of the Portland Press Herald in a story entitled, "Outsiders' come inside for two fine shows".  An image of PPH's unauthorized use of York's photograph is depicted in **Exhibit A**.

16.     York's photograph uniquely depicted the sculpture with York's choice of lighting, sizing, cropping, angle and focus.  A copy of York's original photograph is depicted in **Exhibit B**.

17.     PPH had not requested permission to use York's unique photograph of Angel Braestrup's "The Kiss" in its story.  PPH did not credit York as the photographer of the photograph.

18.     On or about November 29, 2015, York discovered that PPH had used his photographs of four sculptures created by Rich Entel, the collection of sculptures entitled "Rich Entel's Cardboard Menagerie" in the Audience section of the Portland Press Herald in a story entitled, "3D art is new again in hands of Rich Entel".  An image of PPH's unauthorized use of York's photographs is depicted in **Exhibit C**.

19.     York's photograph uniquely depicted each of the sculptures with York's choice of lighting, sizing, cropping, angle and focus.  A copy of York's original photographs is depicted in **Exhibit D**.

20.     PPH had not requested permission to use York's unique photograph of Rich Entel's "Cardboard Menagerie" in its story.  PPH did not credit York as the photographer of the photograph.

21.     On or about December 27, 2015, York discovered that PPH had used his photograph of a sculpture created by Emma McCabe for a Maine College of Art exhibition entitled "Wake Up Alice!" in the Audience section of the Portland Press Herald in a story entitled, "'Wake

Up' call: Fete for Alice illustrates talents of MECA artists". An image of PPH's unauthorized use of York's photograph is depicted in **Exhibit E**.

22. York's photograph uniquely depicted the sculpture with York's choice of lighting, sizing, cropping, angle and focus. A copy of York's original photograph is depicted in **Exhibit F**.

23. On or about January 25, 2016, Elizabeth F. Valentine, Esq. of Maine Community Law Center, acting as counsel for York, sent PPH a letter informing PPH that it had used a number of York's photographs, including those depicted in Exhibits A-C, without authorization, that such use constituted copyright infringement, and demanding that PPH compensate York for such unauthorized use of York's photographs. A copy of Ms. Valentine's correspondence is attached as **Exhibit G**.

24. PPH responded by denying York's claims of copyright infringement and suggesting that the burden of notifying PPH of York's rights in and to the photographs, and thus for avoiding PPH's copyright infringement, lies solely on York. A copy of PPH's correspondence, dated March 4, 2016, is attached as **Exhibit H**.

25. PPH has continued, over the past year and a half, to refuse to credit York as the photographer of photographic works that PPH regularly uses, despite York's objections thereto and various and continued legal correspondences regarding PPH's copyright infringement of York's photographs.

26. Despite York's attempts to resolve this matter without resort to litigation, both on his own and through counsel, PPH has generally refused to consider changing its procedures to identify the owners of copyrighted materials, and has specifically refused to ensure that Mr. York is properly credited as the photographer of the works referenced herein.

27. PPH's practices do not include inquiring into the identity of the owners of copyrighted materials nor performing due diligence to determine whether copyrighted works are being used with permission.

28. On or about March 19, 2017, York discovered that PPH had used his photograph of a sculpture created by Crystal Cawley entitled "DNR Model" in the Audience section of the Portland Press Herald in a story entitled, "Forest Avenue gallery shows eclectic work of Crystal Cawley". An image of PPH's unauthorized use of York's photograph is depicted in **Exhibit I**.

29. York's photograph uniquely depicted the sculpture with York's choice of lighting, sizing, cropping, angle and focus. A copy of York's original photograph is depicted in **Exhibit J**.

30. York has obtained U.S. Copyright Registration No. VA 2-061-196 for his photograph of Crystal Cawley's "DNR Model". A copy of U.S. Copyright Registration No. VA 2-061-196 is attached as **Exhibit K**.

31. On or about September 16, 2017, York discovered that PPH had used his photograph of a sculpture created by Joe Hemes entitled "Speed of Light" in the Maine Today Magazine in a story entitled, "Autumn may be nigh, but art scene stays in midsummer form". An image of PPH's unauthorized use of York's photograph is depicted in **Exhibit L**.

32. York's photograph uniquely depicted the sculpture with York's choice of lighting, sizing, cropping, angle and focus. A copy of York's original photograph is depicted in **Exhibit M**.

33. York has duly filed a U.S. copyright application with the U.S. Copyright Office for the photograph of the "Speed of Light" sculpture, which is now pending registration.

34. York has filed a copyright application with the U.S. Copyright Office, which is now pending registration, for his photographic depictions of Angel Braestrup's "The Kiss" sculpture, Rich Entel's "Cardboard Menagerie" sculptures, and Emma McCabe's Alice in Wonderland-inspired sculpture.

35. PPH continues to use York's photographs without authorization or permission and in violation of U.S. Copyright Laws.

36. As a result of York's objections to PPH's unauthorized use of York's photographs, and York's public exposure of PPH's practices of copyright infringement, PPH has retaliated by informing art galleries and prospective clients that PPH "cannot use" York's photographic depictions of artists' works.

37. PPH's staff writers have been informed by PPH to notify artists and galleries that PPH cannot use York's photographs.

38. On at least three separate occasions of which York is aware, PPH staff writers have informed artists and galleries that PPH cannot use York's photographs.

39. PPH's representation that it cannot use York's photography is knowingly false and fraudulent, since York has informed PPH that it only needs to obtain permission from York to use York's photographs and to properly credit York as the photographer.

40. PPH's representation to artists and galleries that it cannot use York's photography has irreparably damaged York's business, as the galleries and artists understand this subtle threat

to mean that, if they use Jay York's photography, they will not gain exposure via the Portland Press Herald, and their events will not be published.

41. PPH's representation to artists and galleries that it cannot use York's photography has spread by word of mouth throughout the Portland art community and has caused York to lose business, clients and prospective clients.

42. York has been damaged by PPH's false representation since his business is focused on photographing artists' works.

43. PPH's representation to artists and galleries that it cannot use York's photography has been made with malicious and retaliatory intent and with the aim of destroying York's reputation and business.

## FIRST CLAIM FOR RELIEF

(For Copyright Infringement Pursuant to 17 U.S.C. § 101 *et seq.*)

44. Plaintiff repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

45. Upon information and belief, Defendant PPH had access to Plaintiff York's photographs through (a) access to Plaintiff's client's gallery showings, (b) Plaintiff's client's websites, and/or (c) Plaintiff's client's publications, including brochures and flyers.

46. Upon information and belief, Defendant's copying, reproduction and publication of Plaintiff's photographic works was intentional, done with full knowledge of Plaintiff's rights, and in an effort to impermissibly copy and publish Plaintiff's photographic works.

47. Defendant's marketing, promotion and sale of newspapers bearing copies of Plaintiff's photographic works was done without Plaintiff's authorization or consent.

48. Defendant's marketing, promotion and sale of newspapers bearing copies of Plaintiff's photographic works unfairly capitalizes on Plaintiff's invaluable goodwill.

49. Defendant's actions have damaged and are likely to continue to damage the reputation and substantial goodwill of Plaintiff.

50. Upon information and belief, by its willful and misleading conduct, Defendant has made and will continue to make substantial profits and gains to which it is not, in law or in equity, entitled.

51. As a direct and proximate result of Defendant's acts of copyright infringement, Plaintiff has and continues to be irreparably injured and monetarily damaged by Defendant's acts. Plaintiff has no adequate remedy at law.

52. Plaintiff York has incurred and will continue to incur attorneys' fees, costs and expenses in the prosecution of this action for copyright infringement.

53. As a result of Defendant's willful and wrongful conduct, Plaintiff is entitled to recover damages which include any and all profits that Defendant has made as a result of its wrongful conduct, and Plaintiff's losses due to Defendant's misconduct, pursuant to 17 U.S.C. § 504(a)(1).

## SECOND COUNT FOR RELIEF

(For Tortious Interference with Contractual and Business Relations)

54. Plaintiff repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

55. Plaintiff has enjoyed a solid business reputation and has cultivated business relationships with Plaintiff's clients over the last 28 years of owning his photography business. Plaintiff has performed his services for his numerous clients without interruption.

56. Defendant has made various false and misleading statements to individuals in the Portland art community with malicious intent to tortiously interfere with Plaintiff's business relationships.

57. Defendant made these various false and misleading statements with knowledge of their falsity for the purpose of inducing Plaintiff's clients and prospective clients to abandon their relationships and prospective relationships with Plaintiff.

58. Defendant made these various false and misleading statements with the intent of destroying Plaintiff's business and business relationships and in retaliation for Plaintiff's public claims of Defendant's copyright infringement.

59. As a direct and proximate result of Defendant's various false and misleading statements, Plaintiff's clients have relied on such statements and ceased working with Plaintiff.

60. As a direct and proximate result of Defendant's false and misleading statements and representations, Plaintiff has suffered irreparable economic loss and damage to his business reputation and future business prospects.

61. The circumstances of this dispute warrant Plaintiff's recovery of punitive damages, in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**. Plaintiff demands:

1. That an injunction be issued enjoining Defendant and Defendant's officers, agents, servants, employees and attorneys and those persons in active concert or participation with them:

    a. From infringing Plaintiff's copyrights in any manner;

    b. From using Plaintiff's photographic works without first obtaining authorization;

    c. From making false, fraudulent statements and misrepresentations regarding their ability to use Plaintiff's photographic works; and

    d. From falsely representing that it cannot use Plaintiff's photographic works.

2. That Defendant be required to enact a policy requiring it to perform proper due diligence to determine the nature of ownership and the identity of owners of copyrighted materials;

3. That Plaintiff be awarded all profits of Defendant plus all losses of Plaintiff, plus any other monetary advantage gained by the Defendant through its infringement, the exact sum to be proven at the time of trial and as available under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*;

4. That Plaintiff be awarded statutory damages under the Copyright Act, 17 U.S.C. § 504(b);

5. That Plaintiff be awarded damages in an amount sufficient to compensate him for its losses and other harm caused by Defendant as a result of Defendant's tortious interference with Plaintiff's business relations;

6.       That Plaintiff be awarded punitive damages in an amount sufficient to punish Defendant for and to deter Defendant from such wrongful conduct;

7.       That Plaintiff be awarded pre-judgment interest as allowed by law;

8.       That Plaintiff be awarded his attorneys' fees;

9.       That Plaintiff be awarded the costs of this action; and

10.     That Plaintiff be awarded such further legal and equitable relief as the Court deems proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE PURSUANT TO FED. R. CIV. P. 38 AND THE 7TH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

Dated: October 2, 2017

Falmouth, Maine

Respectfully submitted,

By: _____
Emily A. Danchuk, Esq. (SBN 4920)
EMILY A. DANCHUK ESQ., LLC
45A Underwood Road
Falmouth, Maine 04105
Tel: (207) 747-4135
Email: eadanchuk@gmail.com

*Attorney for Plaintiff Jay York*